# OCTOBER, 1915.

## DAN LONG v. THE STATE.

### No. 3673.   Decided October 13, 1915.

**1.—Seduction—Sufficiency of the Evidence.**

Where, upon trial of seduction, the evidence, although conflicting, sustained the conviction, there was no reversible error on that ground.

**2.—Same—Evidence—Witnesses Under the Rule—Practice in District Court.**

Where, upon trial of seduction, the court notified counsel that they must call all the witnesses so that the rule could be strictly enforced, but it developed during the trial that a person who had remained in the court room, approached defendant's counsel and informed him that he had seen the prosecutrix some three years before the trial have sexual intercourse with another man than defendant, who was then called as a witness for the defense, and sworn, the court thinking at the time that the witness who was called was placed under the rule, but the defendant's counsel insisting that he offered the witness then to testify, and counsel received the impression that the court sustained the objection made by the State, and the witness was not again called, the proposed testimony of the witness being as to a new alleged fact, should have been permitted to testify, under the circumstances.

**3.—Same—Newly Discovered Evidence.**

Where, upon trial of seduction, a witness for the defense testified to an act of sexual intercourse with the prosecutrix, and his testimony was severely attacked by the State, newly discovered evidence supporting said defendant's witness' testimony, was ground for new trial.

**4.—Same—Newly Discovered Evidence—Motion for New Trial.**

Where, upon trial of seduction, defendant pleaded want of chastity of prosecutrix, and the affidavits attached to the motion for new trial showed that

the prosecutrix had committed acts of sexual intercourse before defendant's promise of marriage, and it was shown that defendant was not in possession of any information that would have put him on notice before the trial that such testimony existed, a new trial should have been granted.

Appeal from the District Court of Franklin. Tried below before the Hon. J. A. Ward.

Appeal from a conviction of seduction; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*R. T. Wilkinson, H. L. Wilkinson, L. W. Davidson, B. O. Shurtleff,* and *C. E. Sheppard,* for appellant.—On question of witness under the rule: Johnson et al. v. Cooley, 71 S. W. Rep., 34; Sessions v. State, 98 S. W. Rep., 243; Ashwood v. State, 40 S. W. Rep., 273; Caviness v. State, 60 S. W. Rep., 555.

On question of newly discovered evidence: Mitchell v. Bass, 26 Texas, 372; Conwell v. G., C. & S. F. Ry. Co., 85 Texas, 102; Pitman v. Holmes, 78 S. W. Rep., 961; Russell v. Nolle, 79 Texas, 267; Riojas v. State, 36 Texas Crim. Rep., 182; Hines v. State, 37 id., 339; Owens v. State, 35 id., 345; Ferguson v. State, 147 S. W. Rep., 339; Black v. State, 160 S. W. Rep., 720.

*C. C. McDonald,* Assistant Attorney General, for the State.

HARPER, JUDGE.—Appellant was convicted of seduction, and his punishment assessed at two years confinement in the State penitentiary.

Miss Ethel Hightower, the alleged seduced young lady, by her testimony, makes a plain case of seduction. She is fully corroborated as to the promise of marriage and act of intercourse, Jim Williams testifying that appellant had admitted to him he was engaged to marry Miss Hightower during the Christmas holidays, and also had admitted the acts of intercourse. Appellant did not testify, nor offer any proof tending to disprove this state of facts, but rested his defense on the proposition that Miss Hightower was not a chaste and virtuous woman at the time he carnally knew her. The evidence makes a plain case of seduction—acts of intercourse, while appellant was engaged to marry the young lady, she yielding her virtue out of love and affection for appellant, having implicit faith and confidence in him.

There are many errors assigned, but after a careful review of the record we are of the opinion that none of them present error, unless it be that the court erred in refusing to permit the witness Leroy Davis to testify, and erred in refusing to grant a new trial on account of newly discovered testimony. As said before, the defense of defendant was that Miss Hightower was not a chaste and virtuous woman at the time he had carnal knowledge of her. When the case was called for trial, the rule was demanded. The court notified counsel they must call all their witnesses, as he would strictly enforce the rule. Leroy Davis had not been summoned as a witness, and he was not called,

sworn and placed under the rule. He remained in the courtroom and heard the witnesses testify until the evening recess. It was made plain by the testimony by this time that the defense of appellant was that Miss Hightower had been guilty of acts of intercourse with other men prior to the time that appellant had become engaged to marry her. During the evening recess Leroy Davis approached appellant's counsel and told him that about three years before the trial, on a certain Sunday night, on the road between Mt. Vernon and Purley, he saw Thurman Davis and Ethel Hightower have sexual intercourse with each other. When court convened for the night session, appellant's counsel explained the facts to the court and called the witness. Appellant insists he then called him to testify, and offered him as a witness. The court states he thought counsel was calling the witness to have him placed under the rule, and that he swore the witness, and ordered him to go out under the rule. It is undisputed that at this time the State objected to Leroy Davis testifying, and the court called counsel's attention to the fact that at the beginning of the trial he had stated the rule would be strictly enforced. Counsel received the impression that the court sustained the objection made by the State. The court says he did not so intend his remarks, but expected the witness to be again called, when he would rule on whether or not he would be permitted to testify, after preliminary investigation. The witness did not testify, and was not again called. As during the trial no witness had testified about whether or not Thurman Davis had ever had sexual intercourse with Miss Hightower, and the witness' testimony being on a most material issue in the case, it would have been error to have refused to permit him to testify. If he had heard witnesses testify in regard to what he would be called upon to testify in regard to, and his testimony be of a supporting nature, a different issue would be presented. But his testimony that he proposed to give was as to a new alleged fact, about which no witness had been questioned, and under the circumstances shown by this record, it is apparent that appellant was deprived of testimony material to his defense, as, the court contends, through misapprehension of his counsel of the court's ruling. The affidavit of the witness accompanies the record that he would have so testified had he been permitted to do so.

Again, attached to the motion for a new trial is the affidavit of Will McDonald, that in the fall of 1912 he saw Miss Hightower and Clyde Anderson in a buggy together going towards Miss Hightower's home. That in a hollow near Jack Ferguson's he saw them stop the buggy; that Miss Hightower was sitting on the edge of the buggy seat with her legs spraddled apart and Anderson was between her legs as if they were in the act of intercourse. Clyde Anderson testified on the trial to an act of sexual intercourse with Miss Hightower at this time and place. The State severely attacked his testimony by offering testimony that Anderson had been paid $100 to so testify, and thus materially weakened his testimony. McDonald's testimony would have supported Anderson's testimony, and had a tendency to show that Miss

Hightower was not a virtuous girl. Appellant shows he was not aware of the testimony of McDonald until after the trial, and McDonald says he told no one of what he had seen until after the trial.

Guy Barrett attaches an affidavit, in which he says he would have testified, if called as a witness, that he was with Miss Hightower at a picnic at Clearwater in 1912, and on the way home they went out into the bushes and engaged in an act of sexual intercourse. Such testimony as this one can not ascertain unless it is voluntarily told. Appellant swears positively he was in possession of no information that would have put him on notice that McDonald and Barrett would have so testified.

The State offered rebuttal affidavits which would have a strong tendency to show that the testimony of Barrett and McDonald is unworthy of credit, and the court was authorized to take this into consideration in passing on the motion for new trial. But it strikes us as appellant on the trial was deprived of the testimony of Leroy Davis, and these two new witnesses come forward now and say they would testify to facts which would support the defensive theory of appellant, that he should have been granted a new trial.

The sole issue, as made by appellant on the trial, was that Miss Hightower was not a virtuous female. All this testimony bears directly on that issue, and it is that character of testimony one would have no notice of until informed of it.

As before said, we do not think the other assignments present error, but taking the view of this newly discovered testimony that we do, and that in this State the credit to be given a witness, and the weight to be given his testimony is a question for the jury and not the court, we are of the opinion the court erred in not granting a new trial.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

PRENDERGAST, PRESIDING JUDGE (dissenting).